# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DAVID C. BROWN,
       Plaintiff,

                                        Case Number: 09-11685

v.

                                        HON. NANCY G. EDMUNDS
PRUDENTIAL INSURANCE CO. OF     UNITED STATES DISTRICT JUDGE
AMERICA,
       Defendant.                       HON. VIRGINIA M. MORGAN
                                          UNITED STATES MAGISTRATE JUDGE

_____ /

## REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION TO REVERSE ADMINISTRATOR'S DECISION AND DENYING DEFENDANT'S CROSS MOTION TO AFFIRM DECISION

       This matter is before the court on cross motions for summary judgment in this ERISA action. See, 29 U.S.C. 1132(e)(1)(f) et seq. Plaintiff sought long term disability benefits (LTD) from his ERISA plan, alleging total disability from his occupation. That is, that he was unable to perform the substantial and material duties of his occupation as funeral director and embalmer due to recurrent cellulitis and related complications. Prudential, the Plan administrator and insurer, denied benefits concluding that plaintiff had not documented total disability. Plaintiff contends that the denial is arbitrary and capricious and should be reversed. Oral argument was held before the magistrate judge. After review of the administrative record including the photographs of plaintiff's foot and the surveillance video, and for the reasons discussed in this report, it is recommended that the decision denying benefits be reversed.

*Standard of Review*

       In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101,115 (1989), the Supreme Court

found that when a plaintiff challenges the denial of ERISA benefits, a court's review of the determination is *de novo*, unless the Plan grants to the administrator discretionary authority to determine benefit eligibility. In this case, such discretionary authority likely exists[1] and therefore the court will review the determination under the arbitrary-or-capricious standard of review. *See Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 291-92 (6th Cir. 2005). "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis ex rel. Farmers Band & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir.1989) (quoting *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)).

Unlike determinations with respect to Social Security benefits, plan administrators under ERISA are not required to accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831 (2003). Moreover, ERISA does not impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. *Id.* Reliance on other physicians is generally reasonable so long as the administrator does not totally ignore the treating physician's opinions. *See id.* at 834.

Review pursuant to the arbitrary-or-capricious standard is thus extremely deferential, "[i]t is not, however, without some teeth. Deferential review is not no review, and deference need not

---

[1]

The plan contains language "when Prudential determines that all of these conditions are met" which defendant submits constitutes discretion. This circuit has held that similar language "satisfactory proof of Total Disability to us" confers discretion. *Yager v. Reliance Std. Life Ins.,* 88 F3d 376, 381 (6th Cir. 1996). However, other circuits have found such language in Prudential policies does not confer discretion. *Diaz v. Prudential*, 424 F.3d 635, 637-640 (7th Cir 2005), *Woods v. Prudential*, 528 F.3d 320, 323-324 (4th Cir. 2008), *Nichols v. Prudential* 406 f.3d 98 (2nd Cir. 2005).

be abject." *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003) (citations and internal quotation marks omitted). It "does not require us merely to rubber stamp the administrator's decision. Instead, we are required to review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Glenn v. Metlife,* 461 F.3d 660, 666 (6th Cir.2006) (internal quotation marks and citations omitted), *affirmed* 128 S.Ct. 2343 (2008).

Further, as noted by the Supreme Court in *Glenn* and as applicable in the instant case, where "a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest,* that conflict must be *weighed as a 'factor* in determining whether there is an abuse of discretion.' " *Firestone,* 489 U.S. at 115. (quoting Restatement § 187, Comment *d;* emphasis added; alteration omitted). A conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when, as here, the administrator is an insurance company and not the beneficiary's employer. *Glenn,* 128 S.Ct. at 2348-50. A court is to give more weight to the conflict "where circumstances suggest a higher likelihood that it affected the benefits decision . . . ." *Id.* at 2351. A conflict may affect a benefits decision in several ways. For example, although the treating physician rule does not apply in ERISA cases, the Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832 (2003). As found by our circuit in *DeLisle v. Sun Life Assur. Co. of Canada* 558 F.3d 440, 445 (6th Cir. 2009), when a plan administrator both decides claims and pays benefits, it has a "clear incentive" to contract with consultants who are "inclined to find" that a claimant is not

entitled to benefits. *Kalish v. Liberty Mutual/Liberty Life Assurance,* 419 F.3d 501, 507 (6th Cir. 2005). *See also*, *Loan v. Prudential Ins. Co. of America* 2010 WL 960336, 2 (6th Cir. 2010) (noting that Prudential was operating under a conflict of interest). We apply those standards here.

*Background*

Plaintiff David C. Brown is self-employed as the licensed owner and CEO of David C. Brown Funeral Home. He is a mortician. He states that until his disability, he was a full time employee working as a funeral director and embalmer.[2] His duties included directing and supervising the day to day operations, transporting bodies, interviewing and advising families, setting up floral arrangements, dressing bodies, carrying and transporting caskets, walking and standing to greet visitors, and performing embalming work including moving bodies onto and off a table and placing them in a casket. His job aside from embalming requires walking and standing six hours a day. (Administrative Record [hereinafter "AR"] 447).

Plaintiff Brown is a member of the Michigan Funeral Directors Association Benefit Trust Welfare Benefit Plan ["the Plan"], a welfare benefit plan governed by ERISA. Defendant Prudential is insurer, as well as the fiduciary and administrator of that Plan. The Plan provides long term and short term disability benefits. In 1955, plaintiff suffered a crush injury to his lower right extremity that was treated with skin grafts, surgery, excision of the fibula, and immobilization. Plaintiff worked despite the injury from 1975 until June 12, 2006. Over time, plaintiff developed recurrent, non-healing ulcers with draining to his lower right leg and foot that

---

[2] Plaintiff listed his occupation as funeral director, which is light work (Dict. Occ Titles, 187.167-030). He says that a significant portion of the work involves embalming, which is classified as heavy work. (Dict. Occ Titles 338.371-014) (AR 447). He says that even the funeral director occupation is precluded because it involves standing or walking for six hours per day. *Id.*

required frequent elevation of the leg and resulted in an inability to stand or walk for any prolonged period. In 2006, plaintiff developed the additional problem of an ingrown toenail. His podiatrist excised the toenail from his right big toe in June, 2006. Shortly thereafter, plaintiff stepped into a puddle of water which soaked into the wound and caused an infection. He took oral antibiotics but the infection grew worse. (AR 403-406, 477). He was diagnosed with cellulitis that required two inpatient hospitalizations of about 7 to 10 days during July and August, 2006. (AR 405, 463-467). He continued treatment at University of Michigan Hospital infectious disease department through 2006. (AR 468-473). Plaintiff received intravenous antibiotics including Vanomycin, Levaquin, and Doxycycline. Id. By October, 2006 the antibiotics were discontinued and he was to keep pressure off his foot for another month. (AF 479-80). Further medical problems occurred and in August, 2007, his foot was draining daily and he had redness in his ankle. (AR 442).

Plaintiff applied for benefits to the Plan on December 27, 2006. In June, 2007, the Plan advised that it was denying benefits because plaintiff received a salary throughout the 90 day elimination period. Plaintiff characterizes these payments as disability payments, not earnings.[3]

In July, 2007, plaintiff sought reconsideration of the denial alleging that he received no income after March 26, 2007. In September, 2007, defendant looked at the medical information and denied the claim stating that Dr. Lubin, plaintiff's podiatrist reports that plaintiff's chronic ulcers have minimal or no drainage and no pain, that an internal assessment of the medical records did not document loss of function, that defendant previously determined that plaintiff was

_____

[3]According to defendant, the issue as to the source of money plaintiff received after June, was never resolved. Prudential did not reverse its decision to deny benefits for the period. (D/E # 10, Def.'s Br. 3).

working despite the ulcers, that plaintiff's ownership of the funeral home gives him the flexibility to schedule around the time he would need to rest and elevate his leg. Plaintiff appealed the denial and included photographs of his foot and the report of Samuel Goldstein. In a letter dated May 13, 2008, defendant upheld the prior denial noting that the cellulitis had been effectively treated in October, 2006, that its physician reviewer opined that there were no functional impairments after March, 2007, that surveillance videos of plaintiff on three occasions show him walking and getting in and out of his vehicle, and that plaintiff has a hunting license demonstrating that he is an "avid outdoorsman" capable of performing the functions of the job.

Plaintiff was again hospitalized at the U of M Hospital June 3, 2008 with a fever. His leg and foot exhibited redness. (AR 483). He was admitted with cellulitis. (AR 484-489). Again, he received a course of intravenous antibiotics. (AR 501, 518).

On June 12, 2008, plaintiff again appealed the denial of benefits and during the appeal period provided hospital records of his June inpatient stay for cellulitis, photos of plaintiff's foot during infection, and a report from Dr. Giannini, M.D. a physical medicine and rehabilitation specialist who examined him on or about September 30, 2008. The report indicated that plaintiff has among other things, recurrent right lower extremity cellulitis, right lower extremity lymphedema, and right lower extremity neuropathy. Dr. Giannini concluded that plaintiff should not engage in:

> [A]ny type of prolonged sitting standing or walking [as it] results in increasing swelling and discomfort in his right lower extremity requiring him to elevate the foot. Based on the patient's current condition, physical examination and review of medical records from the University of Michigan and Dr. Lubin, I advise the following restrictions: 1. Limited sitting standing and walking; 2. Elevate the right lower extremity as needed.

(AR 524).

Dr. Giannini observed severe atrophy and pitting edema in the lower right extremity as well as venous stasis changes in the skin. (AR 523-4). He continued:

> These restrictions are medically necessary to prevent recurrent episodes of cellulitis and potential serious complications. Furthermore, the above diagnosed conditions preclude him from performing the essential duties of his former occupation of funeral director and embalmer. Thus, totally disabling him from his former occupation.

(AR 524).

In December, 2008, the defendant completed its second and final appeal review and upheld its denial. Prudential noted that its physician-reviewer opined that the although plaintiff has cellulitis and lymphodema, the conditions were not so serious as to preclude work. (AR 358-360). Further, that the podiatrist reviewer said that the surveillance video of May 5, 2008 shows ambulation ability, the infectious disease reviewer opined that plaintiff would probably not have needed hospitalization if he gone to the hospital the night he went to the hockey game instead of the next day, that plaintiff did not need to adhere to Dr. Giannini's recommendations, and that the surveillance video revealed perfect normal ambulatory ability. Plaintiff timely appealed the denial to this court.

*Analysis*

Under the plan language, Total Disability exists when Prudential determines, due to sickness or accidental injury, the person is "not able to perform, for wage or profit, the material and substantial duties of [his/her] occupation," and after the initial duration of period of total disability, [he/she is] not able to perform for wage or profit the material and substantial duties of any job which [he/she is] reasonably fitted by . . education, training, or experience." In order to be entitled to benefits, the participant also must be not working at any job for wage or profit

and must be under the regular care of a doctor. (The Plan, as quoted in D/E # 10, Def.'s Br. 18)

    *1. Plaintiff's claim was first denied because Prudential determined that he was receiving a salary. (AR 207-209).*

    After a telephone call with plaintiff on March 23, 2007, in which Prudential asked if he was still receiving money from the Funeral Home, the reviewer's notes are as follows: "Although ee not actively working, he is still paying himself a salary and therefore not eligible to receive LTD benefits." (AR 160). As plaintiff notes, the receipt of income is not preclusive and his payment to himself of employer funded disability benefits does not affect eligibility. Indeed, the Plan provides for an offset of these amounts. (AR 83-86). Prudential did not evaluate any medical information at that time, nor did it further inquire as to the duties and activities that plaintiff performed in his occupation. Instead, it delayed the determination and made plaintiff go though another 90 day elimination period, effectively denying plaintiff nine months of payments. Plaintiff submits that this reading of the policy language was arbitrary and capricious. The court agrees. It is difficult to believe that the defendant's representative would not be aware–and more importantly that the administrator/decision maker would not be aware that mere receipt of money from the employer when there was a provision for an offset of that amount in the Plan would be sufficient to bar further review of the claim.

    *2. The Medical Evidence*

    The issue is whether Prudential appropriately considered the medical information provided by plaintiff as well as its reviewing doctors. Dr. Bachman, defendant's reviewing physician, noted the recurrent ulcers on plaintiff's right foot and ankle. She agreed that plaintiff

had recurrent cellulitis but not osteomyelitis.[4]  Dr. Bachman indicated that the standard treatment would be to restrict him from prolonged walking and standing and agreed that he should elevate his foot. (AR 137-138)  Dr. Bachman then indicated that as owner of the funeral home, plaintiff could schedule his time to rest and elevate the leg as needed and wearing a soft shoe would not prevent him from working within the restrictions. Dr. Bachman reports that plaintiff had been working the previous December to March while he had the ulcers.  Plaintiff stated he had not. The source of this confusion may be the defendant's previous denial for income, but it is not clear upon what evidence Dr. Bachman relied in making that reference.

The restriction of no prolonged walking and standing and need to elevate the foot imposed not only by plaintiff's physicians but concurred in by Prudential's internal reviewer-physicians mean that plaintiff was not able to perform the material and substantial duties of his occupation–even as described as light work.  Prudential did not seek to obtain occupational descriptions of plaintiff's own duties as director and/or embalmer.  The Dictionary of Occupational Titles notes that funeral director jobs require frequent walking and standing. (AR 146) Prudential's denial mischaracterizes the claim.  Plaintiff is not disabled from being a funeral home owner; he is disabled from being a funeral home director.

In October, 2007, plaintiff asked Prudential to reconsider the denial and the claim was again denied on May 13, 2008.  During that period, plaintiff submitted a vocational assessment by Samuel Goldstein, (AR 445-449), and photographs of plaintiff's right foot between June and September, 2006. These were submitted to the court on a CD and the court has reviewed them.

---

[4]According to the Mayo Clinic website, cellulitis is a bacterial infection of the skin and osteomyelitis is a bone infection.  www.mayoclinic.com

Prudential also obtained during the review period an independent medical peer review by MES podiatrist Randall Beckman, D.P.M. and MES infectious disease specialist John Brusch, M.D. (AR 288-291; 312-313). Dr. Beckman notes that both he and Dr. Brusch agree that plaintiff has lymphodema and peripheral vascular disease. Plaintiff also has chronic swelling in the foot. Dr. Brusch's report indicated that he had spoken with Dr. Beckman and reviewed the medical records from the University of Michigan. From those, he concluded that plaintiff's condition began in June 2006, there was a suspicion of osteomyelitis based on objective testing, and so he was admitted for inpatient treatment first at Oakwood and then at U of M. The condition was limited to cellulitis and was resolved by October 2006 through a course of intravenous antibiotics. Plaintiff was discharged from the University of Michigan hospital and released to go on vacation to Florida for two weeks. When he returned, he saw Dr. O'Keefe for knee pain due to activity but no mention was made of any problems with his feet or ankles. He did not return for further treatment and it appears that his condition resolved.

Video surveillance in March and May 2008 shows very little upon which Prudential could rely. It shows only very brief periods of time when plaintiff is walking a few yards, slowly, with some limping and discomfort observable. It is also apparently undisputed that at this time plaintiff was wearing a surgical boot or soft shoe, and that despite living across the street from his business, he drives to it. There are no pictures of him going for long walks and standing for prolonged periods of time. The fact that plaintiff may have purchased a hunting or fishing license and thus it can be inferred that he is active, seem to be contradicted by Dr. Goldstein report which notes that plaintiff wants to hunt with friends but cannot due to his limitations. Prudential's reviewer states in December 2008 that the surveillance shows plaintiff walking normally. (AR

360). This statement misquotes the reviewing physician who described plaintiff as using the surgical boot at all times, walking with an antalgic gait. (AR 289). The podiatrist notes that he has a good cadence and walks without difficulty. It should be noted that there is very little walking visible on the surveillance CD and that the walking is not more than a few yards at any one time.

### 3. Additional considerations

Prudential declined to have a physician examine plaintiff. It made credibility findings without the benefit of a physical examination. As noted by plaintiff's counsel, credibility determinations made without such an examination support a conclusion that the decision is arbitrary and capricious. *Helfman v. GE Group Life Assurance Co*, 573 F.3d 383, 393 (6th Cir. 2009); *Smith v. Cont'l Cas Co*, 450 F3d 253, 263-264 (6th Cir. 2006).

In *Helfman*, the court found that the insurer/administrator Sun Life used a combination of in-house consultants and independent consultants in reviewing Helfman's claim. *Helfman*, 573 F.3d at 393. Thus, the circuit court concluded that "the conflict of interest due to Sun Life both determining eligibility for benefits and paying those benefits should at least be considered." *Id.*, citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005) ("[W]hen a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism."). In addition, in *Calvert,* 409 F.3d at 295-296, the court noted that "the failure to conduct a physical examination-especially where the right to do so is specifically reserve in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Accord, e.g., Bennett v. Kemper Nat'l Servs., Inc.,* 514 F.3d 547, 554 (6th Cir. 2008); *Cooper v. Life Ins. Co. of N. Am.,* 486 F.3d 157, 167 (6th Cir.

2007); *Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263 (6th Cir. 2006); *Evans v. UnumProvident Corp.,* 434 F.3d 866, 877 (6th Cir. 2006).

Here, like in *Helfman*, "the right to do so [conduct an examination] was reserved by the plan, and its failure to examine [plaintiff] raises questions about the thoroughness and accuracy of its review of his claim, *see, e.g., Calvert,* 409 F.3d at 295." *Helfman*, 573 F.3d at 393. Likewise, in this case, it appears that the failure to examine plaintiff supports a conclusion that Prudential's decision was always going to be denial.

*Remedy*

In *Shelby County Health Care Corp. v. Majestic Star Casino* 581 F.3d 355, 373 (6th Cir. 2009), our circuit held that:

> [W]here a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.' *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 621 (6th Cir.2006); *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1175 (10th Cir.2006) (stating that a district court has two options after determining that a denial of benefits was improper: "it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits") (internal quotation marks omitted); *see also* 29 U.S.C. § 1132(a)(1)(B) (establishing the right of plan participants who bring suit pursuant to ERISA 'to recover benefits due to him under the terms of his plan').

581 F.3d 355, 373.

The court continued:

> In contrast, where "there [was] no evidence in the record to support a termination or denial of benefits," an award of benefits is appropriate without remand to the plan administrator. *E.g., DeGrado,* 451 F.3d at 1176; *see Helfman v. GE Group Life Assurance Co.,* 573 F.3d 383, 396 (6th Cir.2009) (ordering remand to the plan administrator after determining that the record did not "clearly establish[ ]" that the claimant was entitled to benefits). Thus, where a plan administrator properly construes the plan documents but arrives at the "wrong conclusion" that is "simply contrary to the facts," a court should award benefits. *Grosz-Salomon*

> *v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1163 (9th Cir.2001). Under such circumstances, "remand is not justified" to give the plan administrator "a second bite at the apple." *Id.*

*Shelby County Health Care Corp.,* 581 F.3d at 373 -374 (6th Cir. 2009)

Here, it appears that all the physicians opined that plaintiff has recurrent cellulitis with lymphodema and other complications. Limitations of walking and standing and frequent elevation of the feet are agreed by all to be the standard treatment. This limitation is inconsistent with the requirements of both the funeral director light work and the embalmer heavy work. Thus, plaintiff has established that he is totally disabled from his occupation.

*Conclusion*

Accordingly, the decision denying LTD benefits is arbitrary and capricious. The plaintiff's motion to reverse the administrator's determination be granted. It is recommended that the decision be reversed and the matter be remanded to the administrator with directions to calculate and pay the benefits due since March 2007.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Within

fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 17, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on May 17, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan